No. 24-10455

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

CHRISTOPHER RUSANOWSKY,

*Plaintiff-Appellant,*

v.

THE CITY OF DALLAS; SERGEANT ROGER A. RUDLOFF,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A DALLAS
POLICE DEPARTMENT POLICE OFFICER,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Civil Action No. 3:22-cv-1132, Judge Ed Kinkeade

## APPELLANT'S REPLY

Peter B. Steffensen
SMU DEDMAN SCHOOL OF LAW
FIRST AMENDMENT CLINIC
P.O. Box 750116
Dallas, TX  75275-0116
(214) 768-4077
psteffensen@smu.edu

Thomas S. Leatherbury
Thomas S. Leatherbury Law, PLLC
Cumberland Hill School Building
1901 North Akard Street
Dallas, TX 75201-2305
(214) 213-5004
tom@tsleatherburylaw.com

**Counsel for Appellant Christopher Rusanowsky**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. 3

INTRODUCTION ............................................................................. 6

ARGUMENT .................................................................................... 6

   I.   APPELLEES OFFER NO RESPONSE TO RUSANOWSKY'S CONTENTION THAT THE COURT BELOW RESOLVED ISSUES OF MATERIAL FACT IN FAVOR OF SGT. RUDLOFF. ..................... 6

   II.   THE DISTRICT COURT'S FINDING THAT SGT. RUDLOFF PERSONALLY IDENTIFIED RUSANOWSKY ON THE IMPROVED SHOULDER OF THE HIGHWAY ELIMINATES SGT. RUDLOFF'S PROBABLE CAUSE TO BELIEVE RUSANOWSKY OBSTRUCTED A ROADWAY, EVEN UNDER *WADE*. ................................................. 14

      a.   The Court Should Remand for the District Court to Consider the Merits of Appellees' Obstruction Argument in the First Instance. . 15

      b.   Even Accepting Appellees' Characterizations of the Factual Record, Sgt. Rudloff Lacked Probable Cause to Arrest Rusanowsky for Obstruction ................................................................. 16

   III.   RUSANOWSKY'S FIRST AMENDMENT RETALIATION CLAIM SHOULD PROCEED BECAUSE THE OFFICERS LACKED PROBABLE CAUSE TO ARREST RUSANOWSKY, AND THE SUMMARY JUDGMENT RECORD ESTABLISHES A GENUINE DISPUTE OF MATERIAL FACT AS TO RETALIATORY ANIMUS. 26

   IV.   *VERASTIQUE* LIKELY CONTROLS RUSANOWSKY'S MUNICIPAL LIABILITY CLAIM. ..................................................... 31

CONCLUSION ............................................................................... 32

CERTIFICATE OF SERVICE ........................................................ 33

CERTIFICATIONS UNDER ECF FILING STANDARDS ................. 34

CERTIFICATE OF COMPLIANCE ................................................ 35

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) .............................................................. 10

*Bailey v. Iles,*
   87 F.4th 275 (5th Cir. 2023)........................................... 17, 22

*Bigford v. Taylor,*
   834 F.2d 1213 (5th Cir. 1988) ........................................... 17

*Club Retro, L.L.C. v. Hilton,*
   568 F.3d 181 (5th Cir. 2009) ............................................. 22

*Cole v. Carson,*
   935 F.3d 444 (5th Cir. 2019) (en banc)............................. 9, 24

*Degenhardt v. Bintliff,*
   117 F.4th 747 (5th Cir. 2024).............................................. 28

*Evett v. DETNTFF,*
   330 F.3d 681 (5th Cir. 2003) .............................................. 22

*Hartman v. Moore,*
   547 U.S. 250 (2006) ............................................................ 29

*Humphries v. Elliott Co.,*
   760 F.3d 414 (5th Cir. 2014) .............................................. 16

*Keenan v. Tejeda,*
   290 F.3d 252 (5th Cir. 2002) .................................. 27, 30, 31

*Loftin v. City of Prentiss,*
   33 F.4th 774 (5th Cir. 2022)................................................ 11

*Marlowe v. LeBlanc,*
    No. 20-30738, 2022 WL 2101523 (5th Cir. June 10, 2022) ................ 16

*Nieves v. Bartlett,*
    587 U.S. 391 (2019) .................................................... passim

*Parrish v. Premier Directional Drilling, L.P.,*
    917 F.3d 369 (5th Cir. 2019) ................................................ 11

*Paulea v. State,*
    278 S.W.3d 861 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ... 20

*Peña v. City of Rio Grande City,*
    879 F.3d 613 (5th Cir. 2018) ............................................... 16

*Sherman v. State,*
    626 S.W.2d 520 (Tex. Crim. App. 1981) .............................. 20

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ........................................................ 16

*Tolan v. Cotton,*
    572 U.S. 650 (2014) .................................................. 7, 9, 12

*Turner v. Lt. Driver,*
    848 F.3d 678 (5th Cir. 2017) ............................................... 29

*Verastique v. City of Dallas, Tex.,*
    106 F.4th 427 (5th Cir. 2024)............................................. 31

*Wade v. City of Houston,*
    110 F.4th 797 (5th Cir. 2024) (per curiam) ................................. 21, 22

*Winzer v. Kaufman Cnty.,*
    916 F.3d 464 (5th Cir. 2019) .............................................. 12

**Statutes**

Tex. Penal Code § 42.03 ................................................................... passim

Tex. Transp. Code § 552.006 ........................................................... passim

## INTRODUCTION

Appellees' response does not dispute Rusanowsky's core contention here—that the court below resolved material facts in favor of the movant, Sgt. Rudloff, when it held he was objectively reasonable in arresting Rusanowsky for walking on the wrong side of the road.

That alone should justify reversal, especially since the district court declined to reach Appellees' principal argument: that Sgt. Rudloff had actual probable cause to arrest Rusanowsky for obstructing a roadway. The district court found no facts to support that conclusion, nor does the summary judgment record support such a finding.

And since reversal of the dismissal of Rusanowsky's Fourth Amendment False Arrest claim is appropriate, so, too, should Rusanowsky's First Amendment Retaliation claim be revived. Sgt. Rudloff's lack of probable cause to arrest Rusanowsky, combined with Rusanowsky's other evidence of retaliatory animus, is more than sufficient to entitle to Rusanowsky to a trial on that claim as well.

## ARGUMENT

**I. APPELLEES OFFER NO RESPONSE TO RUSANOWSKY'S CONTENTION THAT THE COURT**

**BELOW RESOLVED ISSUES OF MATERIAL FACT IN FAVOR OF SGT. RUDLOFF.**

Rusanowsky's core contention here is that the court below resolved a key inference of disputed material fact in favor of Sgt. Rudloff—whether it was "possible" for Rusanowsky to comply with Texas Transportation Code section 552.006—when it concluded Rudloff was objectively reasonable in believing he had arguable probable cause to arrest Rusanowsky. Br. of Appellant at 43-63. The Supreme Court, in *Tolan v. Cotton*, held that this is error, explaining that courts should be cautious to apply the proper facts to the question of an officer's objective reasonableness at summary judgment. 572 U.S. 650, 656-57 (2014). "Courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions," the *Tolan* Court emphasized. *Id.*

But the district court did precisely that, when it inferred it was possible for Rusanowsky to venture across the highway's obstructed traffic lanes, despite contemporaneously finding that, from Sgt. Rudloff's perspective, conditions on the freeway were perilous by the time he arrived to disperse the protesters who were obstructing traffic. The district court credited Sgt. Rudloff's testimony that he and his fellow

officers arrived to the scene and were confronted with an onslaught of "rocks and bottles" as they moved across the interstate's traffic lanes. ROA.1075; *see* ROA.680, 683, 686. Likewise, the court noted Rusanowsky's "colorable argument that it was impossible, as a practical matter to walk on the proper side of the interstate." ROA.1081. Rusanowsky testified he "was especially afraid that a driver would lose their temper with the protesters and drive forward," ROA.924, which the district court credited as "wise." ROA.1082.

Despite both sides agreeing that the possibility of Rusanowsky complying with the statute by reaching the proper side of the roadway was in serious doubt—indeed, Rudloff and his fellow officers specifically emphasized (and still do) the dangerous and chaotic scene to which they arrived, Resp. at 20-24—the district court held that it was reasonable for Rudloff to expect Rusanowsky to place himself in the middle of that danger, to avoid arrest. ROA.1081-1082. And in fact, the district court's analysis went further than even Sgt. Rudloff was willing to go in his own briefing, by finding that Rusanowsky had legal permission to cross the interstate while other protesters were illegally obstructing traffic—a

theory not even Rudloff advanced below, or to this Court. *See id.*; Br. of Appellant at 53-57.

Appellees offer nothing of substance in response to that argument. Their brief cites *Tolan* once, to discuss the applicable appellate standard of review for qualified immunity issues, Resp. at 26, and otherwise ignores *Tolan* entirely when arguing that the district court reached the correct conclusion as to Rudloff's objective reasonableness. But their argument commits the same error the district court did by assuming a factual context that is not supported by the factual record here. *See also Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc) (requirement that courts "take the evidence and draw factual inferences in the non-movants' favor at the summary judgment stage" is "no less binding 'even when … a court decides only the clearly-established prong of the standard.'") (quoting *Tolan*, 572 U.S. at 657).

That much is clear from Appellees' framing of the "objective reasonableness" question. They ask, "could Sgt. Rudloff have reasonably believed it was possible for Rusanowsky to cross to the proper side of the freeway to walk given that protestors had brought traffic to a halt?" Resp.

at 40. Appellees say, and the district court agreed, that the answer to that question is 'yes.' *See* ROA.1082.

The reason why that framing violates *Tolan*, though, is that the factual record shows Rudloff and his fellow officers *could not have reasonably believed* Rusanowsky could have made such a crossing, particularly when doing so would have required Rusanowsky to potentially expose himself to the projectiles purportedly being thrown at the officers. *See* ROA.680, 683, 686. And even if those facts merely raised a *question* about whether Sgt. Rudloff believed it was possible for Rusanowsky to cross, the inference to be drawn from that question should have been resolved in Rusanowsky's favor, not Rudloff's. *See* 572 U.S. at 651 ("[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

In other words, Appellees' framing of the objective reasonableness inquiry—and the district court's resolution of that issue—adopted a factual context belied by the facts to which both parties appeared to agree below—that crossing onto the interstate's obstructed traffic lanes was too

dangerous, and thus not "possible." Br. of Appellant at ADD-1 (quoting Tex. Transp. Code § 552.006). If Sgt. Rudloff did not himself believe it was possible, how then could an objectively reasonable officer reach a different conclusion? *See* ROA.1080 ("If a reasonable person could conclude *from the facts known to the arresting officer* that the arrested person had committed or was committing an offense, probable cause exists, and the infirmity in the arrest disappears." (emphasis added) (citing *Loftin v. City of Prentiss*, 33 F.4th 774, 780 (5th Cir. 2022))). Neither the district court, nor Appellees, address that seeming contradiction—a contradiction which also implicitly casts aside the district court's separate finding that Rusanowsky had made a "colorable argument" the crossing was "impossible[.]" ROA.1081.

Taken together, Rusanowsky's evidence and Rudloff's evidence was indeed "significantly probative" of a dispositive material fact—the impossibility of Rusanowsky crossing the interstate's obstructed traffic lanes under the allegedly fraught circumstances of the moment. Resp. at 42 (quoting *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019)). The district court, however, resisted that evidence to conclude just the opposite—that Sgt. Rudloff, despite allegedly

witnessing a riotous scene on the highway and being the target of dangerous projectiles, "could have inferred that a crossing was possible." ROA.1081. By resolving a disputed material fact against Rusanowsky in resolving the question of Sgt. Rudloff's objective reasonableness, the district court committed reversible error. *See Winzer v. Kaufman Cnty.*, 916 F.3d 464, 474 (5th Cir. 2019).

Instead of addressing this issue head on, Appellees claim that Rusanowsky's argument "disavows the standard of review[,]" emphasizing that the issue requires an "objective inquiry." Resp. at 40. But Rusanowsky repeatedly highlighted that an objective reasonableness standard applies to the resolution of the second prong of the qualified immunity analysis, while underscoring *Tolan*'s important gloss on that analysis: that "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656; *see* Br. of Appellant at 45, 46, 47, 61, 63. The sum and substance of Rusanowsky's argument is precisely that the court below applied improper summary judgment principles to the objective reasonableness inquiry.

Nor was Rudloff's decision to arrest Rusanowsky the kind of "split-second judgment" deserving of greater breathing room for officers to exercise their discretion to arrest. *See* Resp. at 40 (quoting *Nieves v. Bartlett*, 587 U.S. 391, 401 (2019)). As Rusanowsky pointed out below, by the time Rudloff turned to arrest Rusanowsky, the exigencies of the moment had dissipated. ROA.457-458, 775. The interstate had been cleared, most protesters had moved to the safety of a grassy area adjacent to the highway, and Rusanowsky stood at a safe distance from those protesters in order to continue documenting them. ROA.924-928, ROA.1012-1013. No urgency justified Rudloff's decision to arrest Rusanowsky—Rusanowsky was not interfering with the officers' duties, he stood apart from the protesters, he was visually identifiable as a journalist, and he did not display any intent to flee the scene or otherwise participate in any illegal conduct. ROA.1018-1030, 1044-1052.

It bears emphasis too, that faced with a fourth opportunity[1] to substantively grapple with the meaning of the words "if possible" in Transportation Code section 552.006—both with respect to the

---

[1] *See* Br. of Appellant at 52 (describing in additional detail the other opportunities which Sgt. Rudloff had to address the issue, but declined to do so).

limitations that phrase imposed on the probable cause analysis, and how Sgt. Rudloff's knowledge of conditions at the time did or did not justify Rusanowsky's arrest—Appellees again spend almost no time addressing it, investing less than one page of their Response on an issue that served as *the* dispositive issue of the district court's summary judgment order. *See* ROA.1079-1086. At best, Appellees appear to agree with the result, while investing little time in defending the district court's underlying reasoning. Instead, they devote much of their time seeking affirmance on other grounds that the district court never considered.

As discussed further herein, the Court should reject those alternative arguments, on which the district court made no factual findings to warrant summary judgment in Sgt. Rudloff's favor; and, at a minimum, the Court should remand for the district court to consider those issues first.

**II. THE DISTRICT COURT'S FINDING THAT SGT. RUDLOFF PERSONALLY IDENTIFIED RUSANOWSKY ON THE IMPROVED SHOULDER OF THE HIGHWAY ELIMINATES SGT. RUDLOFF'S PROBABLE CAUSE TO BELIEVE RUSANOWSKY OBSTRUCTED A ROADWAY, EVEN UNDER *WADE*.**

### a. The Court Should Remand for the District Court to Consider the Merits of Appellees' Obstruction Argument in the First Instance.

Appellees' Response in chief argues that the district court should be affirmed on a basis that it never addressed: whether Sgt. Rudloff had *actual* probable cause to arrest Rusanowsky for obstruction of a roadway, Tex. Penal Code § 42.03. Resp. at 28-37. As Rusanowsky explained in his opening brief, at 30-35—and Appellees agree in a footnote, Resp. at 37 n.4—the district court largely disposed of Plaintiff's Fourth Amendment False Arrest and First Amendment Retaliation claims due to its finding that Sgt. Rudloff had *arguable* probable cause to arrest Rusanowsky for violating section 552.006 of the Transportation Code, not actual probable cause to arrest Rusanowsky for violating section 42.03 of the Penal Code. *See* ROA.1086 (granting summary judgment on the basis that Sgt. Rudloff "could reasonably have believed he had probable cause to arrest Mr. Rusanowsky for walking the wrong direction on the interstate"); Br. of Appellant at 43-50 (describing the qualified immunity analysis for False Arrest claims). The court below thus never reached the arguments that Appellees now frontload here.

Put differently, Appellees ask this Court to affirm the district court on grounds that the district court explicitly declined to reach. For that reason, the Court should remand, at least to give the district court the opportunity to consider those important questions in the first instance. *See Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)); *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018); *see also Marlowe v. LeBlanc,* No. 20-30738, 2022 WL 2101523, at *1 (5th Cir. June 10, 2022) ("When a district court's analysis of an issue is not sufficiently reasoned for this court to review, we may remand for further consideration.").

> **b. Even Accepting Appellees' Characterizations of the Factual Record, Sgt. Rudloff Lacked Probable Cause to Arrest Rusanowsky for Obstruction**

Even if the Court reaches the question of Sgt. Rudloff's actual probable cause to arrest Rusanowsky for obstruction of a roadway, Tex. Penal Code § 42.03, the record supplies no basis to conclude that Sgt. Rudloff, or any other officer on scene that day, was justified in making the arrest. In fact, just the opposite is true: the district court (1) found

facts sufficient to conclude that Rusanowsky did not obstruct any portion of the roadway, and (2) implicitly concluded—or at least should have inferred in Rusanowsky's favor—that Sgt. Rudloff would have known that.

To reiterate, "[p]robable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." *Bailey v. Iles*, 87 F.4th 275, 285-86 (5th Cir. 2023). But the totality of the facts cut both ways: an officer "also may not disregard facts tending to dissipate probable cause." *Id.* at 286 (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988); Br. of Appellant at 43-46.

Sgt. Rudloff alleges he had probable cause to arrest Rusanowsky solely for being among the group of people whom he alleges were obstructing the interstate when Rudloff and his team arrived to disperse them. Resp. at 32-37. To commit an obstruction offense, Rusanowsky must have "render[ed]" the interstate "impassable" or made "passage unreasonably inconvenient or hazardous." Tex. Penal Code § 42.03(b).

The district court did not find that Rusanowsky either rendered the interstate "impassable" or made it "unreasonably inconvenient or hazardous" during the brief time that Rusanowsky stepped onto the improved shoulder of the highway—and no facts in the record would support a conclusion that he did. At most, the court below found that Rusanowsky "scaled the barrier" separating the improved shoulder from a raised embankment where Rusanowsky had been standing, "stepped onto the shoulder of the interstate, and began walking along the barrier with the flow of traffic." ROA.1074. Rusanowsky was even more particular about his positioning on the improved shoulder—his sworn testimony, cited by the district court, *see id.*, explained that he "walked tightly along the inside of the barrier for approximately one minute" and "remained against the guardrail for [his] safety." ROA.924. He also testified that "[d]uring the brief period of time [he] stood on the shoulder of the Interstate, [he] consciously and intentionally avoided stepping into any of the traffic lanes." ROA.928.

Sgt. Rudloff, and his supporting witnesses, testified that each saw Rusanowsky during the brief time he traversed the improved shoulder. ROA.680, 683, 686. But despite this highly specific memory, none of the

officers could offer a single detail about Rusanowsky's position on the interstate, which way they saw him facing, which direction they saw him moving, and where, specifically, they saw him. *Id.*; *see* ROA.1075 ("Once they reached their destination, Sgt. Rudloff and two DPD corporals saw Mr. Rusanowsky on the highway."). Neither Sgt. Rudloff, nor his fellow officers, thus dispute Rusanowsky's contention that he did not obstruct the interstate's traffic lanes, or the improved shoulder. And if they indeed saw him, as each alleges, then they would have known that.[2]

This is precisely the level of knowledge this Court found *insufficient* to support a finding of probable cause in *Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017). There, the Court held that officers who lacked specific, personal knowledge that the arrestee had actually rendered a passageway impassable or passage unreasonably inconvenient lacked probable cause to arrest a protestor moving through a parking lot and pathway leading to an abortion clinic. As the Court underscored in analyzing state court decisions interpreting Section 42.03, a person who moves through a pathway—such as an improved shoulder—and only

---

[2] Further discovery, of course, could help elucidate the officers' actual knowledge and clarify the specific facts which each officer possessed in the moment.

makes passage through it momentarily inconvenient, does not violate Section 42.03. *See id.* at 393 (citing *Sherman v. State*, 626 S.W.2d 520, 528 (Tex. Crim. App. 1981); *see also Paulea v. State*, 278 S.W.3d 861, 865-66 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (no probable cause to believe defendant caused obstruction under section 42.03 when car was stopped in two-way, two-lane roadway but vehicles could "easily" move around).

Rusanowsky testified that when he stepped onto the improved shoulder of the interstate, he moved continuously along its outermost barrier the entire time, and exited after approximately one minute. Rudloff and his fellow officers say they saw Rusanowsky during this time, but offer nothing of substance to contradict Rusanowsky's version of events. *Compare* ROA.924-925, 928 *with* ROA.680, 683, 686. It is thus *undisputed* that if Rudloff and his fellow officers did specifically witness Rusanowsky on the improved shoulder, they saw nothing amounting to conduct which could be considered obstruction under *Davidson*. Had the district court reached the question, that conclusion would have been inescapable.

Appellees ask the Court to excuse Rudloff's *specific* knowledge of Rusanowsky's conduct, in favor of applying *Wade v. City of Houston* to conclude that he and his team had carte blanche to arrest anyone in the vicinity of the obstructed highway, based only on the generalized knowledge that a large group who situated their protest on a roadway must have obstructed it. 110 F.4th 797, 799 (5th Cir. 2024) (per curiam). *Wade* is not the escape hatch Appellees present it as. There, the Court concluded that the "size and location of the protests" alone "supplied the arresting officers with at least probable cause to conclude that the protestors were rendering passage on the roadways or sidewalks they occupied unreasonably inconvenient for purposes of section 42.03." *Id.*

But here, as in *Davidson*, Rudloff and his fellow officers go further. They claim *specific*, *personalized* knowledge of Rusanowsky's conduct while he was on the highway's improved shoulder. That alone is fatal to their *Wade* argument, because Rudloff specifically testified, and the district court found, he was aware of Rusanowsky's whereabouts in relation to the other protestors. ROA.680 ("I witnessed a photographer on I-35 whom I later learned was Mr. Rusanowsky."); ROA.1075 ("Sgt. Rudloff and two DPD corporals saw Mr. Rusanowsky on the highway.").

Allowing Rudloff to set aside his personal knowledge of Rusanowsky's whereabouts, in favor of asserting a generalized right to arrest Rusanowsky and anyone else in the vicinity of the highway, would throw *Wade* into direct conflict with ordinary Fourth Amendment principles requiring officers to act on the "totality of facts available to them in establishing probable cause[.]" *Bailey*, 87 F.4th at 286; *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (requiring facts be particularized to the arrestee); *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (law enforcement may not disregard facts tending to dissipate probable cause).

Put simply, there is a meaningful difference between the circumstances in *Wade*, where a group of people who obstructed a roadway were encircled by police and then arrested en masse, 110 F.4th at 798; and the circumstances here, where Sgt. Rudloff and two other officers each recall training their sights on Rusanowsky specifically while he was on the highway, ROA.680, 683, 686, observe him move along the outer edge of the highway's improved shoulder for a brief period of time without obstructing anything, ROA.924, 1074, and then decide to arrest him anyway—after Sgt. Rudloff realized Rusanowsky's camera was

trained on him deploying dubious force on other protestors. ROA.926-927.

To resist this, Appellees criticize Rusanowsky's plausible reading of their testimony, Resp. at 42-44, which provided virtually no detail about the officers' precise recollections of Rusanowsky, prior to Rusanowsky's arrest. Indeed, the *sum total* of the officers' specific recollections of Rusanowsky are reproduced below:

| Sgt. Rudloff | Cpl. Barrett | Cpl. Pillar |
|---|---|---|
| "I witnessed a photographer on I-35 whom I later learned was Mr. Rusanowsky." ROA.680. | "Another group of individuals then came up from the freeway over the guardrails of I-35 towards us. This group included the photographer I later learned was Mr. Rusanowsky, whom I also saw coming from the freeway over the guardrails." ROA.683. | "The small group we encountered on the grass appeared to be coming back to the highway. I recall seeing a man with two cameras within the group; at one point, he was in front of me on I-35. I took notice of this because members of the press usually stand to the side of crime scenes and police interactions with suspects. I later learned this was a photographer named Chris Rusanowsky. I arrested him." ROA.686. |

Working from this thin (at best) testimony, Appellees accuse Rusanowsky of making too many inferential leaps about the sequence of events leading up to Rusanowsky's arrest, including the positioning of the officers when they saw him. Resp. at 42-43. But Appellees' alternative factual narrative commits the same sin: they ask the Court to infer too much about the positioning of the officers, and when and where each saw Rusanowsky, even though the officers themselves declined to provide *any* detail to make a definitive conclusion either way.[3] That is *precisely* the kind of factual dilemma that is improper to resolve at summary judgment, and only underscores that the decision of the court below is based on a severely under-developed factual record. *Cole*, 935 F.3d at 446 ("competing factual narratives" limit earlier resolution of qualified immunity, and so "the full reach of qualified immunity gives way to a trial").

---

[3] Appellees also include a photograph in their brief, Resp. at 35, which they claim "plainly shows that Rusanowsky was among the protestors on the freeway." This is also speculative. There is no basis to conclude anything about Rusanowsky's positioning on the highway or proximity to these protestors from a picture that does not depict him, and that was taken using professional photography equipment.

But this Court does not need to wade through the many inferential challenges that support Appellees' probable cause house of cards. The Court can conclude Sgt. Rudloff lacked probable cause to arrest Rusanowsky—or minimally, that there was a genuine dispute of material fact regarding the knowledge he possessed at the time he arrested Rusanowsky—without addressing whether the officers' testimony is unreliable, or whether the officers actually saw Rusanowsky. *See* Resp. at 42-49. Even assuming, without conceding, that the officers' characterization of events is accurate, the specific facts of which they claim knowledge at the time Sgt. Rudloff arrested Rusanowsky were insufficient, under *Davidson* and *Wade*, to give any officer probable cause to believe Rusanowsky had violated section 42.03. Rusanowsky's continuous movement along the outer edge of the highway's barrier, and quick exit from the shoulder once he reached a safe place to do so—which took place in less than one minute—is conduct that falls below the bar set by *Davidson* to constitute obstruction. *Compare* ROA.924, 928 *with Davidson*, 848 F.3d at 392-394.

If the officers saw Rusanowsky, then the logical inference flowing from that testimony—uncontroverted by any of the officers' other

recollections—is that they saw Rusanowsky moving continuously along the outer barrier of the improved shoulder of the highway, and then immediately leave it. Clearly established law at the time of Rusanowsky's arrest made that conduct, without more, insufficient to give the officers probable cause to believe that Rusanowsky violated section 42.03. *See Davidson*, 848 F.3d at 393. If the Court declines to remand for the district court to consider these questions in the first instance, the Court should conclude Rudloff lacked actual probable cause to arrest Rusanowsky for obstruction, and remand with instructions to deny Sgt. Rudloff's motion for summary judgment on that basis.

### III. RUSANOWSKY'S FIRST AMENDMENT RETALIATION CLAIM SHOULD PROCEED BECAUSE THE OFFICERS LACKED PROBABLE CAUSE TO ARREST RUSANOWSKY, AND THE SUMMARY JUDGMENT RECORD ESTABLISHES A GENUINE DISPUTE OF MATERIAL FACT AS TO RETALIATORY ANIMUS.

Finally, if the Court concludes that summary judgment in Sgt. Rudloff's favor was improper, the Court should likewise reverse the lower court's dismissal of Rusanowsky's First Amendment Retaliation claim. The court below dismissed this claim for two reasons: (1) that the existence of arguable probable cause to arrest Rusanowsky for violating

section 552.006 of the Transportation Code largely prohibited his retaliation claim from proceeding, ROA.1086; and (2) that Rusanowsky had not established that the circumstances of his arrest permitted his claim to proceed under the narrow exception for retaliation claims where probable cause *does* exist, recognized in *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019) (describing an exception to the general rule that the existence of probable cause tends to defeat a retaliatory arrest claim, "where officers have probable cause to make arrests, but typically exercise their discretion not to do so."); *see* ROA.1087-1089.[4]

Appellees' principal response is that Rusanowsky did not provide sufficient evidence of retaliatory animus to satisfy the requirement in retaliatory arrest claims that Sgt. Rudloff's "adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *see* Resp. at 61-62. Appellees describe a recent decision of this Court, which explains that "the motive must *cause* the injury. It must be a 'but-for' cause, meaning that the adverse action against the plaintiff would

---

[4] Rusanowsky does not appeal the district court's determination that his First Amendment Retaliation claim cannot proceed under the *Nieves* <u>exception</u>.

not have been taken absent the retaliatory motive." Resp. at 60 (quoting *Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024)).

This description, which largely quotes *Nieves*, provides an incomplete picture of the standard that *Nieves* itself offered clarity on. There, the Supreme Court explained that a lack of probable cause *on its own* goes a long way to demonstrating that a retaliatory motive was the but-for cause of the injury in retaliatory arrest cases:

> In addition, like retaliatory prosecution cases, evidence of the presence or absence of probable cause for the arrest will be available in virtually every retaliatory arrest case. And because probable cause speaks to the objective reasonableness of an arrest, its absence will—as in retaliatory prosecution cases—generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite.

587 U.S. at 401-02 (cleaned up). With this understanding, Appellees' disavowal of *Keenan v. Tejeda* as "long preced[ing]" *Nieves*, Resp. at 59-60, misses the point. *Keenan* is unquestionably still good law, and its approach to the animus/injury causation question aligns perfectly well with the Supreme Court's discussion in *Nieves* about the kind of factual record which supports a finding of but-for causation. The absence of probable cause, the *Nieves* Court underscored, is "highly valuable

circumstantial evidence" that "tend[s] to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution[.]" *Id.* at 400 (quoting *Hartman v. Moore*, 547 U.S. 250, 261 (2006)).

Here, Sgt. Rudloff arrested Rusanowsky without probable cause, and the record of his conduct permits an inference that his decision to arrest Rusanowsky was driven by retaliatory animus toward Rusanowsky for exercising his (indisputably) clearly established right to record the police in the exercise of their official duties. *Turner v. Lt. Driver*, 848 F.3d 678, 688 (5th Cir. 2017). As Rusanowsky recounted, Sgt. Rudloff only decided to arrest him after realizing that Rusanowsky had photographed him deploying force on several different protestors nearby. Rusanowsky had not been interfering with Sgt. Rudloff's duties, or the duties of any other officer, was clearly identifiable as a journalist, and attempted to convey that fact to Rudloff when Rudloff moved in to arrest him. *See* ROA.925-928, 1012-1013, 1018-1052.

Rudloff's lack of probable cause to arrest Rusanowsky, combined with Rusanowsky's own photographic evidence and testimony that Rudloff arrested him to punish him for capturing his actions on camera,

easily cleared the bar set by *Nieves*—at least at the qualified immunity summary judgment phase, on a limited record that Rusanowsky has not had the opportunity to develop.[5] As this Court in *Keenan* explained, "[i]f no reasonable police officer could have believed that probable cause existed for the law enforcement actions of [the officers] against the plaintiffs, then their retaliation violated clearly established law of this circuit." 290 F.3d at 262; *see also Davidson*, 848 F.3d at 393. Sgt. Rudloff's baseless decision to arrest Rusanowsky the moment he realized Rusanowsky had his camera lens trained on him—clear evidence that Rusanowsky was exercising his First Amendment rights when Rudloff initiated his arrest, ROA.927, 1018-1052—is sufficient circumstantial evidence to create, at a minimum, a fact dispute over whether a retaliatory motive drove Sgt. Rudloff to arrest Rusanowsky.[6]

---

[5] Appellees chastise Rusanowsky for not citing to the record for his evidence of retaliatory animus. Resp. at 61 (citing Br. of Appellant at 71). Rusanowsky did, a mere two paragraphs prior. Br. of Appellant at 70 (citing ROA.924-928); *see also id.* at 20-22 (citing ROA.926-928, 1013,1044-1052).

[6] Appellees also seem to misread *Nieves* to impose a "comparator evidence" requirement even in instances where probable cause is lacking. *See* Resp. at 65. But the Supreme Court explained that "comparator evidence" is just another form of causation evidence that can be used to establish retaliatory animus, even when probable cause to make an arrest is present. 587 U.S. at 407; *see Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024). The absence of probable

Accordingly, the Court should reverse the decision of the district court dismissing Rusanowsky's First Amendment Retaliation claim because (1) Sgt. Rudloff is not entitled to summary judgment on the basis that he had probable cause to arrest Rusanowsky; and (2) Rusanowsky provided sufficient evidence of retaliatory animus. *See Nieves*, 587 U.S. at 401-02; *Keenan*, 290 F.3d at 261.

## IV. *VERASTIQUE* LIKELY CONTROLS RUSANOWSKY'S MUNICIPAL LIABILITY CLAIM.

Lastly, Rusanowsky does not dispute Appellees' contention that *Verastique v. City of Dallas, Tex.*, 106 F.4th 427 (5th Cir. 2024), likely serves as an independent basis to affirm the district court's dismissal of Rusanowsky's municipal liability claim against the City of Dallas. Prior to *Verastique*, the district court authorized Rusanowsky's claim to proceed on a "failure to supervise or discipline theory," reasoning only that the claim was "better suited for resolution" at the summary judgment stage. ROA.423. Since *Verastique* analyzed this theory of municipal liability against similar factual allegations, *Verastique* likely controls the outcome here. But, for the reasons described in Judge

---

cause on its own, however, is itself highly probative of but-for causation in retaliatory arrest cases. *Nieves*, 587 U.S. at 401-02.

Graves's dissent in part in *Verastique*, Rusanowsky should be able to press his municipal liability claim should *Verastique* be overturned. *See* 106 F.4th 436-41 (Graves, J., concurring in part and dissenting in part); *see also* Petition for Writ of Certiorari, *Verastique v. City of Dallas, Tex.*, No. 24-398 (Oct. 7, 2024), 2024 WL 4468146.

## CONCLUSION

For the foregoing reasons, and those explained in Appellant's opening brief, the judgment of the court below should be reversed.

Respectfully submitted,

| /s/ Peter B. Steffensen | /s/ Thomas S. Leatherbury |
|---|---|
| Peter B. Steffensen | Thomas S. Leatherbury |
| SMU DEDMAN SCHOOL OF LAW | Thomas S. Leatherbury Law, PLLC |
| FIRST AMENDMENT CLINIC[7] | Cumberland Hill School Building |
| P.O. Box 750116 | 1901 North Akard Street |
| Dallas, TX 75275-0116 | Dallas, TX 75201-2305 |
| (214) 768-4077 | (214) 213-5004 |
| psteffensen@smu.edu | tom@tsleatherburylaw.com |
| | |
| | *Attorneys for Appellant* |
| | *Christopher Rusanowsky* |

---

[7] Counsel for Appellant wish to thank SMU Dedman School of Law 3L students Bradley Kucera, Danielle Ball, and Nicholas Smetzer for their assistance in drafting this brief.

## CERTIFICATE OF SERVICE

I certify that on November 25, 2024, I caused a true and accurate copy of the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit through the CM/ECF system. I certify that the participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Peter B. Steffensen*
*Counsel for Appellant*

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) any required privacy redactions have been made, 5th Cir. R. 25.2.13; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Peter B. Steffensen*
*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,192 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the type-face requirements and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) and Fifth Circuit Rules 32.1 and 32.2 because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

*/s/ Peter B. Steffensen*
*Counsel for Appellant*